UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

                                  CR. NO. 95-80272

v.

                                  HON. LAURIE J. MICHELSON

LUIS NADRAZO ARANA,

      Defendant.
                               /

**MOTION AND BRIEF IN SUPPORT OF
COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(c)(1)(A)(i)**

    Luis Arana respectfully asks this Court for an order reducing his sentence to time served based on his age—68 years old—and grievous medical conditions. Mr. Arana has been in custody since 1996, or 24 years. But his medical condition has deteriorated dramatically in the last year, as he suffered an attack of acute pancreatitis requiring emergency surgery. This has led to lasting debilitating pain and left him wheelchair-bound. He continues to undergo treatment for "chronic unrelenting pain," infection prevention, high blood pressure, chronic anemia, obesity, enlarged prostate, kidney failure, obesity, and edema, among other things. (Ex. B, Current Medications.) He is prescribed over 20 medications, and takes many of them daily. (*Id.*) He also receives intramuscular injections of anti-inflammatory medication, aimed at pain management. (*Id.*)

-1-

At the same time, even while suffering these severe medical issues, Mr. Arana has managed to complete more than 50 programs, including earning his GED. He has been programming throughout his incarceration. (Ex. A, Progress Report, at 1–2.) He has not incurred any discipline since 2011, and according to his counselor, he "has for the most part maintained clear conduct." (*Id.* at 2.) He has paid off his financial obligations. (*Id.*) He also completed the drug program and the Challenge Program, which particularly bodes well for his ability to re-enter society. (*Id.* at 3.) The Challenge Program "is a cognitive-behavioral, residential treatment program" that provides "treatment to high security inmates with substance abuse problems and/or mental illnesses." (Ex. F, BOP Challenge Program Description.) "In addition to treating substance use disorders and mental illnesses, the program addresses criminality, via cognitive-behavioral challenges to criminal thinking errors." (*Id.*) The program's inventions are based on evidence-based techniques for effective reductions in misconduct and recidivism. (*Id.*)

On October 24, 2019, Mr. Arana petitioned the administration at FCI Victorville for early release, and counsel is not aware of any response. (Ex. C, Arana Request.) The social worker transcribed the statement for him because his medical condition at the time was too severe even for him to complete the paperwork. Because the BOP staff failed to respond to Mr. Arana's request in a timely manner,

§ 3582(c)(1)(A)(i), as amended by the First Step Act, permits this Court to directly address his motion for early release.

Mr. Arana's age and medical conditions satisfy the "extraordinary and compelling reasons" standard under the newly-amended 18 U.S.C. § 3582(c)(1)(A)(i). He respectfully requests that the Court reduce his sentence to time served and permit him to live with his children, who have a home ready to accommodate his medical needs. Specifically, he intends to live with his adult son Luis and his daughter Oilda will take him to his medical appointments. (Ex. G, Oilda Letter; Ex. H, Issa Letter.)

## I.
### JURISDICTION

On December 21, 2018, the First Step Act amended 18 U.S.C. § 3582(c)(1)(A)(i) to provide district judges jurisdiction to consider a defense motion for a sentencing reduction based on extraordinary and compelling reasons after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." First Step Act of 2018, § 603(b), PL 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018). Mr. Arana filed a request for compassionate release with prison officials on October 24, 2019. (Ex. C, Arana Request.) Because of "the lapse of 30 days" from the receipt of his request, this Court has jurisdiction to consider the merits of his motion to reduce sentence. *See United States v. Walker*, No. 1:11 CR 270, 2019 WL 5268752, at *1 (N.D. Ohio Oct. 17, 2019) (holding court had

-3-

jurisdiction to consider motion for compassionate release when BOP did not respond within 30 days to institutional request that BOP claimed it did not receive).

## II.
## LEGAL STANDARD

The newly-amended version of § 3582 empowers this Court to reduce Mr. Arana's sentence, after considering the factors in § 3553(a), if it finds that "extraordinary and compelling reasons warrant such a reduction," and "a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A); *United States v. Gross*, No. 2:04-CR-032-RMP, 2019 WL 3538967, at *1 (E.D. Wash. Aug. 2, 2019).

The Sentencing Commission, in turn, states that advanced age, combined with deteriorating health and service of a significant portion of the sentence, constitute "extraordinary and compelling reasons" for a reduction in sentence. USSG § 1B1.3, cmt n.(1)(A)(i), (ii). The Commission also authorizes the Court to grant compassionate release on grounds elaborated by the BOP. *Id.*, cmt. n.(1)(D). The BOP's program statement on compassionate release provides for early release for prisoners (1) 65 or older, (2) with chronic or serious medical conditions related to the aging process, who (3) have served 50 percent of his sentences. PS 5050.50, *Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)*, at 6 (Jan. 17, 2019), *available at* https://www.bop.gov/policy/progstat/5050_050_EN.pdf. It also provides for

-4-

compassionate release for anybody 65 and over, regardless of health, who has served more than 75 percent of their term of imprisonment. *Id.*

Since passage of the First Step Act, courts have recognized "extraordinary and compelling reasons" in several circumstances. In particular, courts have shown a willingness to disagree with the BOP's assessment of whether a prisoner's health condition warrants compassionate release. *See, e.g., United States v. Bellamy,* No. CV151658JRTLIB, 2019 WL 3340699, at *1–2 (D. Minn. July 25, 2019) (granting relief to 71-year-old inmate confined to wheelchair with heart problems, diabetes, and chronic kidney disease); *United States v. Fai,* No. 93-CR-1340 (RJD), 2019 WL 3428504, at *2 (E.D.N.Y. July 30, 2019) (same, with 65-year-old inmate with terminal cancer); *United States v. Clyne*, No. 1:16-CR-115-BLW, 2019 WL 3292349, at *1 (D. Idaho July 22, 2019) (same, with 72-year-old inmate with history of heart attacks); *United States v. Cantu-Rivera*, No. CR H-89-204, 2019 WL 2578272, at *1 (S.D. Tex. June 24, 2019) (same, with 69-year-old inmate with age-related health problems); *United States v. McGraw*, No. 202CR00018LJMCMM, 2019 WL 2059488, at *2 (S.D. Ind. May 9, 2019) (same, with wheelchair-bound 72-year-old with diabetes and kidney disease).

Courts also have examined the inadequacy of care provided by the BOP. *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *7 (M.D.N.C. June 28, 2019) (citing negligent treatment of breast cancer); *United States v. York*, No.

3:11-CR-76, 2019 WL 3241166, at *2 (E.D. Tenn. July 18, 2019) (noting allegation BOP ignored recommendations of outside specialists); *United States v. Morgan*, No. 214CR329JCMGWF, 2019 WL 1427538, at *2 (D. Nev. Mar. 29, 2019) (granting release after 11 months because of inadequate eye treatment).

Moreover, some courts, recognizing the expanded scope of the compassionate-release provisions in the First Step Act, have relied on factors outside of health in granting sentencing relief. *See, e.g., Cantu*, 2019 WL 2498923, at *5; *Cantu-Rivera*, 2019 WL 2578272, at *2. These factors have included family reunification; time already served; rehabilitation, including involvement in BOP programming; changes in sentencing policy; and history of employment. *Cantu*, 2019 WL 2498923, at *5 (family reunification); *Cantu-Rivera*, 2019 WL 2578272, at *2 (time served, rehabilitation, sentencing policy); *Beck*, 2019 WL 2716505, at *7 (employment, assistance to authorities, time served, health issues).

As explained below, Mr. Arana meets the criteria for compassionate release.

### III.
### HISTORY OF THE CASE AND MR. ARANA'S MEDICAL CONDITION

Mr. Arana is from Cuba and, at the time of his offense, had a sixth grade education. PSR ¶ 75. He left school to start working, and then in 1969, at age 17, he entered the Cuban military, as was mandatory at the time. PSR ¶ 77. He was discharged in 1972. *Id.* He entered the United States in 1980, and he became a naturalized citizen in 1995. PSR ¶ 69.

In the late 1990s, Mr. Arana was charged and found guilty of conspiracy to distribute cocaine, aiding and abetting murder for hire, aiding and abetting intentional killing, and aiding and abetting murder in relation to a drug-trafficking crime. Mr. Arana helped move cocaine from Miami to Detroit for trafficking. PSR ¶ 14. According to the PSR, one of Mr. Arana's partners had a falling out with him, and another person, Jose Balcse, murdered the partner after being paid by Roberto Perez. PSR ¶ 20.

At the time, Mr. Arana had no prior criminal history: no convictions, no arrests, no other criminal conduct. PSR ¶ 62–66. However, because of the severity of the offense, he faced a guidelines imprisonment range of life. PSR ¶ 83. At the time, this guidelines range was mandatory.

Even at Mr. Arana's original sentencing, the probation department recognized that he had high blood pressure. PSR ¶ 72. At the time, he was just 46 years old.

Mr. Arana has faced serious health problems as he has aged in prison. A medical summary from January of this year confirms that he suffers obesity, hypertension, hyperbilirubinemia, hyponatremia (low salt levels), chronic anemia, and chronic renal insufficiency (i.e., kidney failure). (Ex. F, Medical Records, at 4.) Moreover, in September 2019, Mr. Arana began to suffer acute necrotizing pancreatitis and a pancreatic abscess. (Ex. F, Medical Records, at 14.) This form of pancreatitis "carries a high rate of morbidity and mortality." (Ex. G, Christine

Boumitri, et al., *Necrotizing Pancreatitis: Current Management and Therapies*, 50 Clinical Endoscopy 357, 362(2017).) Mr. Arana's condition was particularly bad because his pancreas was septic, infected with bacteria.

Mr. Arana was transferred to an outside hospital for emergency surgery. Although this surgery appears to have alleviated his acute life-threatening condition, the illness and surgery have led to lasting debilitating pain and left him wheelchair-bound. He continues to undergo treatment for "chronic unrelenting pain," infection prevention, high blood pressure, chronic constipation, enlarged prostate, and edema. (Ex. B, Current Medications.) He is prescribed over 20 medications, and takes many of them daily. (*Id.*) He also receives intramuscular injections of anti-inflammatory medication, aimed at pain management. (*Id.*)

## IV.
### ARGUMENT

**A.  Mr. Arana's age, the length of time he will have been in custody, and his serious age-related medical conditions establish extraordinary and compelling reasons for release.**

Both the Sentencing Commission's policy statements concerning compassionate release—set forth in the comments to USSG § 1B1.13—and BOP policy support Mr. Arana's motion for compassionate release. The Sentencing Guidelines recommend compassionate release if (1) a defendant suffering a serious and advanced illness with an end of life trajectory, even if there is no specific prognosis of life expectancy, or (2) if the defendant suffering any serious physical

condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.3, cmt n.(1)(A)(i), (ii).

BOP policy also supports Mr. Arana's motion for compassionate release. *See* USSG § 1B1.13, cmt. n.(1)(D) (recommending courts take into account factors that "the Director of the Bureau of Prisons" determines constitute "an extraordinary and compelling reason" for release). The BOP's policy on compassionate release is set forth in BOP program statement 5050.50. *See* PS 5050.50, *supra*. Section 4(b) of this program statement provides that an inmate who fits the following criteria should be considered for compassionate release:

- Age 65 and older.
- Suffer from chronic or serious medical conditions related to the aging process.
- Experiencing deteriorating mental or physical health that substantially diminishes their ability to function in a correctional facility.
- Conventional treatment promises no substantial improvement to their mental or physical condition.
- Have served at least 50% of their sentence.

Mr. Arana meets nearly all of the criteria for compassionate release under these provisions, except that it is impossible to calculate 50% of a life sentence. He is 68 years old, and his health has severely diminished as a result of his aging process. He has been incarcerated since March 1996 and is approaching 25 years in custody.

With respect to the serious deterioration in his physical health, Mr. Arana's medical problems are exactly the type of chronic and progressive age-related conditions that the BOP has singled out as warranting compassionate release: BOP

has specifically flagged severe chronic pain as grounds for compassionate release. Bureau of Prison, Operations Memorandum 002-2016 at 2 (Mar. 25, 2016), *available at* https://www.bop.gov/policy/om/002_2016.pdf. Mr. Arana suffers "chronic unrelenting pain." He is unlikely to ever recover from this condition. Right now, he is wheelchair-bound and receiving heavy doses of both oral and injectable pain medication.

Mr. Arana's daughter Issa Madrazo describes the changes she has witnessed in her father's condition. (Ex. H, Issa Letter.) He has lost "lots of weight, he was extremely weak, he struggled to sit up from his bed, keeping his balance, feeding himself." (*Id.*) He must take several medication and, after nearly 25 years of incarceration, is wheelchair-bound for the first time. (*Id.*) She also explains that it has been very hard for their family to get information from the BOP. (Counsel can confirm that it took significant effort to get information about Mr. Arana's health condition, especially when he was hospitalized.)

Incarceration exacerbates Mr. Arana's medical conditions, creating additional medical risk factors that he should not have to endure. Federal prison is a stressful and dangerous environment, and Mr. Arana is extremely vulnerable due to his age and poor health.

The statutory responsibility to decide whether Mr. Arana's motion for compassionate release should be granted ultimately falls to this Court, not the BOP.

-10-

Sentencing decisions "[should] not be left to employees of the same Department of Justice that conducts the prosecution." *Setser v. United States*, 566 U.S. 231, 242 (2012). Instead, USSG § 1B1.13 directs the Court—not BOP—to decide whether "extraordinary and compelling reasons" exist and then to evaluate whether § 3553(a)'s sentencing factors warrant compassionate release.

Congress enacted the compassionate-release provisions of the First Step Act in response to the widespread recognition that the BOP does not "properly manage" its compassionate-release program. *See* Dep't of Justice, Office of Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program*, at 11 (Apr. 2013) ("The BOP does not properly manage the compassionate release program, resulting in inmates who may be eligible candidates for release not being considered."); Dep't of Justice, Office of the Inspector General, *The Impact of an Aging Inmate Population on the Federal Bureau of Prisons*, at 51 (May 2015) ("Although the BOP has revised its compassionate release policy to expand consideration for early release to aging inmates, which could help mitigate the effects of a growing aging inmate population, few aging inmates have been released under it."). According to the DOJ's Inspector General, one of the main ways the BOP mismanages the program is by applying "varied and inconsistent understandings of the circumstances that warrant consideration for compassionate release"—exactly what happened in Mr. Arana's case. Dep't of Justice, Office of the Inspector General, *Statement of*

*Michael Horowitz, Inspector General, before U.S.S.C. hearing on Compassionate Release & the Conditions of Supervision* (Feb. 17, 2016), *available at* https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearingsand-meetings/20160217/IG.pdf.

**B.     Section 3553(a) supports a time-served sentence for Mr. Arana.**

Once the Court concludes that extraordinary and compelling reasons for release exist, it must then evaluate whether the § 3553(a) factors—just punishment, deterrence, incapacitation, and the need "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"—support a time-served sentence. *See* 18 U.S.C. § 3582(c)(1)(A)(i). In evaluating these factors, this Court must bear in mind both the facts that were available to it at sentencing as well as "evidence of postsentencing rehabilitation." *Pepper v. United States*, 562 U.S. 476, 491 (2011) (noting that postsentencing conduct is "highly relevant to several of the § 3553(a) factors"). These factors all support reducing Mr. Arana's sentence to time served.

*Just punishment.* When this Court sentenced Mr. Arana, nobody could have anticipated how difficult his time in BOP custody would be. When Mr. Arana is released from prison, he will be irrevocably crippled and weakened in a way he has never been before. Suffering in prison, being away from his family during this devastating chapter of his life, having to struggle with his grievous medical

conditions while under the extreme stress of incarceration—all of these factors have conspired to make the time Mr. Arana has already served far harder than prison time otherwise would be.

Nonetheless, Mr. Arana has made the most of his time in incarceration. As noted, he has completed over 50 programs. These have included programs on decisionmaking, job skills, self-management, handling stress, and avoiding recidivism. (Ex. A, Progress Report, at 1-2.) He earned his GED. He completed the Challenge Program. Although his record over the past 24 years shows three infractions, the most serious of these occurred in 2000 and earlier, nearly 20 years ago. His progress report noted that he has "for the most part maintained clear conduct." (*Id.* at 2.) These infractions are not an indication that he is any danger to society if released early.

*Deterrence & incapacitation.* Given his lack of criminal history before this case, his advanced age, his supportive family, and his medical issues, Mr. Arana is a low-risk release candidate at this stage in his life. Mr. Arana's daughter Oilda is in regular communication with undersigned counsel and remains deeply supportive of her father. In an attached letter, she explains that she is ready to facilitate his medical care and transportation. (Ex. G, Oilda Letter.)

As for general deterrence, that goal was accomplished when the Court meted out the original sentence in this case. The Court made it very clear, with its sentence,

-14-

that people who break our laws will receive significant prison time, and Mr. Arana has served close to 25 years, a quarter century. Reducing Mr. Arana's sentence based on the compelling medical circumstances this motion presents will not undermine society's interest in deterrence—because society will understand that this reduction was occasioned by compelling factors that will not arise in the mine-run case.

*Rehabilitation.* Medical treatment in custody is a poor (and costly) substitute for medical care in the context of a family both capable and committed to undertaking one's medical care. Rehabilitation never supports incarceration. *See* 18 U.S.C. § 3582(a) ("[I]mprisonment is not an appropriate means of promoting correction and rehabilitation."). Here, given Mr. Arana's severe medical issues, the interest in rehabilitation argues powerfully in favor of compassionate release directly to Mr. Arana's family.

## CONCLUSION

For the foregoing reasons, Mr. Arana respectfully asks this Court to grant his motion for compassionate release, reduce his sentence to time served, and order his immediate release to live with his family.

Respectfully submitted,

*/s/ Benton C. Martin*
Federal Defender Office
Attorney for Luis Arana
613 Abbott St., 5th Floor
Detroit, Michigan 48226
(313) 967-5832
Benton_Martin@fd.org

Dated: March 17, 2020

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

LUIS NADRAZO ARANA,

        Defendant.
_____/

CR. NO. 95-80272

HON. LAURIE J. MICHELSON

CERTIFICATE OF SERVICE

I certify that I submitted this filing on the date indicated above using the CM/ECF system, which will send notification to opposing counsel.

                                                */s/ Benton C. Martin*
                                                Federal Defender Office
                                                613 Abbott St., 5th Floor
                                                Detroit, Michigan 48226
                                                (313) 967-5832
                                                Benton_Martin@fd.org

Dated: March 17, 2020