UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

v.

D13- LUIS ARAÑA,

     Defendant.

Case No. 2:95-cr-80272-LJM-13
Honorable Laurie J. Michelson

---

## ORDER ON DEFENDANT'S RENEWED MOTION
## FOR COMPASSIONATE RELEASE [850]

For arranging the killing of his former partner in a cocaine trafficking enterprise, Luis Araña was convicted by a federal jury of conspiracy to possess cocaine with intent to distribute (Count 1); murder-for-hire (Count 2); aiding and abetting an intentional killing (Count 3); and aiding and abetting a firearms murder in relation to a drug trafficking crime (Count 4). He was sentenced by now-retired U.S. District Judge Gerald E. Rosen in May of 1999 to four concurrent terms of life imprisonment. (ECF No. 792, PageID.313.) Judge Rosen expressed his belief that a life sentence was the fair and appropriate sentence. (ECF No. 846, PageID.642.)

Araña is now 68 years old and has served 24 years of his sentence. After he suffered an attack of acute pancreatitis requiring emergency surgery, and as a result of deteriorating health, Araña filed a motion for compassionate release on March 17, 2020. (ECF No. 842, PageID.631.) In addition to complications from the pancreatitis, he was receiving treatment for infection prevention, high blood pressure, chronic anemia, obesity, enlarged prostate, kidney failure, and edema. (*Id.*) At that time, the Bureau of Prison facility where Araña is housed, Victorville Medium I, did not have any active cases of the coronavirus.

The Government acknowledged that whether Araña's deteriorating health satisfied the "extraordinary and compelling" threshold for compassionate release was a close call. (ECF NO. 846, PageID.646.) And because the Government did not believe this was the critical issue in determining the propriety of compassionate release, the Court assumed that Araña circumstances were extraordinary and compelling. *United States v. Arana*, No. 2:95-CR-80272-LJM-13, 2020 WL 2214232, at *3 (E.D. Mich. May 7, 2020).The Government further acknowledged that "[t]here is no reason to believe that the defendant poses a danger to others or a risk of recidivism if released, at this age and in this medical condition." (ECF No. 846, PageID.686.) Thus, central to deciding Araña's motion was whether a sentence reduction was consistent with the factors set forth in 18 U.S.C. § 3553(a). *Arana*, 2020 WL 2214232, at *3–5.

So the Court analyzed whether Araña's early release would be consistent with (1) the nature and circumstances of Araña's offenses and personal history, (2) the need to promote respect for the law, deter future crimes, provide for Araña's rehabilitation, and protect the public, and (3) the need to avoid unwarranted sentence disparities among defendants with similar records. (*Id.*) The Court also found guidance in a number of cases addressing compassionate release for sick and elderly defendants serving life sentences for convictions involving murder. And "although the Court sympathize[d] with Araña's current medical condition," it found that, on balance, "the applicable § 3553(a) factors [did] not support Araña's request for compassionate release at [that] time." *Arana*, 2020 WL 2214232, at *6. The Court ultimately denied the motion for compassionate release without prejudice to refiling "should there be significant deterioration in Araña's condition." *Id.*

Four months later, and more than 30 days after seeking relief from the Warden, Araña filed this renewed motion for compassionate release (ECF No. 850), which the Government again

opposes (ECF No. 854). Araña identifies three new circumstances that he believes warrants relief at this time.

*First*, Victorville Medium I is now the BOP facility with the highest level of prisoner COVID-19 infections, including one inmate death. (ECF No. 850, PageID.714–715.) Thus, says Araña, given his age and serious underlying health conditions, he is "more at risk than ever of dying in prison." (ECF No. 850, PageID.724.)

Araña is one of the Victorville inmates that has now tested positive for COVID-19. And while the increased prevalence of COVID-19 at Victorville Medium I favors Araña's position, the fact that he tested positive and apparently was asymptomatic does not. Counsel believe he was placed in isolation and the Court has not received any medical records to suggest he suffered any serious illness or complications from the virus. The medical science on coronavirus reinfection is still very unclear. *See, e.g., Clinical Questions about COVID-19: Questions and Answers, Centers for Disease Control and Prevention*, https://perma.cc/H7EE-6DQJ ("The immune response, including duration of immunity, to SARS-CoV-2 infection is not yet understood."); Katherine J. Wu, *Scientists See Signs of Lasting Immunity to Covid-19, Even After Mild Infections*, N.Y. Times (Aug. 16, 2020), https://perma.cc/4EMG-R3SE; Apoorva Mandavilli, *Can You Get Covid-19 Again? It's Very Unlikely, Experts Say*, N.Y. Times (July 22, 2020), https://perma.cc/2S5E-7NDW. *But see* Apoorva Mandavilli, *First Documented Coronavirus Reinfection Reported in Hong Kong*, N.Y. Times (Aug. 24, 2020), https://perma.cc/MT6M-SW5F; *but see* Apoorva Mandavilli, *First Documented Coronavirus Reinfection Reported in Hong Kong*, N.Y. Times (Aug. 24, 2020), https://perma.cc/MT6M-SW5F. It is unknown whether Araña may be re-infected or how the disease would manifest if he was. But at this time, it does not present a "significant deterioration in Araña's condition," *Arana*, 2020 WL 2214232, at *6. *See United States v. Bland*,

No. 18-20555, 2020 U.S. Dist. LEXIS 135481, at *4 (E.D. Mich. May 28, 2020) ("The risk of contracting COVID-19 a second time and potentially developing a more severe response is not akin to the type of 'extraordinary and compelling reasons' justifying compassionate release identified by the Sentencing Commission."); *United States v. Buford*, No. 05-80955, 2020 WL 4040705, at *5 (E.D. Mich. July 17, 2020) (same).

*Second*, Araña advises that since the filing of his first motion for compassionate release, he returned to the hospital on April 21, 2020 and remained there until May 4, 2020. While hospitalized, Araña was diagnosed with additional serious health problems, including water collection in his lungs. (ECF No. 850, PageID.714.)

This new development also does not significantly change the compassionate-release calculus. The medical records from Araña's hospitalization show that the excess fluid in the abdomen and chest, apparently related to his pancreatitis, was similar to his hospitalization in 2019 and was not a "new" condition. (ECF No. 855-1.) As of May 11, 2020, Araña was "feeling much better" with "no abdominal pain or shortness of breath" and "appears well." (ECF No. 855-2.) There are no medical records after May 11, 2020 reporting any additional problems related to this issue, or any of Araña's other health issues. The BOP has been able to manage Araña's care and the recent excess water in the lungs is not a "significant deterioration in Araña's condition." And as mentioned in the Court's prior opinion, the BOP has expressed a willingness to reevaluate a request for compassionate release if "there is evidence of further disease or deterioration in [Araña's] condition." (ECF No.846, PageID.686.)

*Third*, Araña cites several new cases in which, primarily as a result of the coronavirus pandemic, defendants convicted of similar offenses have been granted compassionate release. (ECF No. 850, PageID.725–729.)

But the cases involving defendants sentenced to life for offenses involving a murder have significant distinctions. The analysis of the § 3553(a) factors is very defendant specific. In *United States v. Gluzman*, No. 7:96-CR-323, 2020 WL 4233049 (S.D.N.Y. July 23, 2020), for example, Rita Gluzman's history and characteristics were very different from Araña's, and her release did not create the sentencing disparities that are present here. In *United States v. Tidwell*, No. CR 94-353, 2020 WL 4504448, at *1 (E.D. Pa. Aug. 5, 2020), defendant had stage IV metastatic prostate cancer with a life expectancy of less than a year. Araña has not shown his life expectancy is similar.

Perhaps Araña's third case, *United States v. Warren*, No. 3:95-CR-00147-01, 2020 U.S. Dist. LEXIS 99095 (S.D. W. Va. June 5, 2020), deserves a more extended discussion. There, defendant pled guilty to a serious drug offense. At the sentencing hearing, the judge found, by a preponderance of the evidence, that defendant had directed the murder of a potential witness. *Id*. at *4. The quantity of drugs involved, and other sentencing enhancements, warranted a life sentence, as did a cross-reference to murder under the sentencing guidelines. *Id*. at * 4–5. In considering the § 3553 factors, the defendant's term of incarceration, post-conviction conduct, and the original sentencing materials, the court found a sentence reduction to time served to be appropriate. *Id*. at * 9. But the court made clear that, "[a]ny reduction in this case is a close call. The Defendant's interest in due process and the injustice of leaving in place a sentence imposed under procedures that no longer pass constitutional muster weigh heavily." *Id*. at *8. This Court has already noted that this case, too, presents a close call. But it does not present the same constitutional concerns related to judge-found facts which influenced sentencing. Araña did not plead guilty. A jury found the murder charges beyond a reasonable doubt. And there has been no suggestion of remorse or responsibility until after multiple filings for compassionate release and an unfavorable court opinion. (*See* ECF No. 850.)

In short, the Court is not persuaded that the events over the last four months demonstrate a "significant deterioration in Araña's condition." The renewed motion for compassionate release is DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.

Dated: September 17, 2020

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE